UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

_____
                                    )
**REBECCA BROWN,**                  )
                                    )         CIVIL ACTION
                                    )
         **Plaintiff,**             )         NO.  4:17-40130-TSH
                                    )
**JUNIPER NETWORKS, INC.,**         )
                                    )
         **Defendant.**             )
_____)

## ORDER AND MEMORANDUM ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT (Docket No. 38)

**September 23, 2019**

**HILLMAN, D.J.**

Rebecca Brown ("Ms. Brown") filed this action against her former employer, Juniper Networks, Inc. ("Juniper"), alleging that it interfered with her rights under the Family Medical Leave Act ("FMLA"), 29 U.S.C. § 2615, and discriminated and retaliated against her for taking leave.  Juniper moves for summary judgment on all Ms. Brown's claims.  (Docket No. 38).  For the following reasons, the Court *grants* summary judgment on the interference claim and *denies* summary judgment on the retaliation and discrimination claims.

## Background

Juniper is a "technology company that designs, develops and markets networking products and services."  (Docket No. 40 at 1).  In June 2015, Juniper hired Ms. Brown as a Major Account Manager ("MAM").  (Docket No. 40 at 1).  In this capacity, Ms. Brown sold Juniper products and services to a finite group of accounts on a regular basis.  (Docket No. 40 at 1).

James Sullivan ("Mr. Sullivan"), Regional Director of the Northeast Enterprise Sales Team, served as Ms. Brown's immediate supervisor. (Docket No. 40 at 2). In the fall of 2016, Mr. Sullivan addressed several performance issues with Ms. Brown, including her failure to timely update her sales pipeline or submit expense reports, her low revenue numbers, and her poor customer satisfaction reports.[1] (Docket No. 43-1 at 10–12). He expressed the intent to issue a written warning to Ms. Brown (Docket No. 41-4 at 2), although he failed to follow through at the time (Docket No. 50-2 at 2).

On September 19, 2016, Ms. Brown applied for FMLA leave effective October 3, 2016. (Docket No. 42-1). Because FMLA leave is unpaid, Ms. Brown requested in her application to use paid time off for the first two weeks[2] and to switch to short term disability payments on October 17. (Docket No. 42-1 at 4). After several extensions, Ms. Brown's FMLA leave was scheduled to end on December 15, 2016. (Docket Nos. 53-3 at 2, 53-4 at 2). Mr. Sullivan allegedly expressed frustration with the length of her leave given these extensions. (Docket No. 48-6 at 2).

While Ms. Brown was on leave, Juniper reorganized its sales force. (Docket No. 40 at 5). Mr. Sullivan had previously overseen MAMs in the Northeast and Mid-Atlantic regions, but after the reorganization, he oversaw MAMs and Territory Account Managers ("TAMs") in the Northeast and upstate New York. (Docket No. 40 at 5). Although the reorganization did not impact the existence of Ms. Brown's job (Docket No. 50-2 at 5), Mr. Sullivan filled her position with another employee. (Docket No. 40 at 8). Stan Frost ("Mr. Frost"), then a TAM, took over

---

[1]   Ms. Brown disputes that the timeliness issues were unique to her or that the customer issues related to her performance rather than engineering or manufacturing issues with Juniper's products and services. (Docket No. 47 at 4).

[2]   Juniper policy allows an employee to use paid time off concurrently with FMLA leave. (Docket No. 42-2 at 3).

Ms. Brown's accounts[3] (Docket No. 40 at 8–9), and when Ms. Brown returned to Juniper on January 12, 2017, Mr. Sullivan reassigned her to the now-vacant TAM role. (Docket No. 40 at 6). Her salary and commission remained the same, but as a TAM, she serviced a geographic territory rather than designated accounts and had a lower sales achievement goal than a MAM. (Docket Nos. 40 at 2, 49 at 5). Mr. Frost and Ms. Brown were the only two employees whom Mr. Sullivan reassigned after the company's reorganization[4] (Docket No. 43-2 at 14), and Mr. Sullivan suggested that, had Ms. Brown returned earlier from her leave, he would have placed her in her former MAM position (Docket Nos. 43-1 at 17, 50-2 at 3).

Mr. Sullivan assigned Ms. Brown a sales achievement goal of $3,750,000 for 2017. (Docket No. 40 at 8). Ms. Brown expressed concern that this goal was too high because it would require her to increase sales in her new territory by almost 700%. (Docket Nos. 40 at 9, 49 at 3–4). Mr. Sullivan allegedly recognized that the territory could not support such a goal and suggested that he would not backfill her position if she left the company. (Docket No. 49 at 3). He refused, however, to alter it.

By the end of the first quarter, Ms. Brown had only achieved 10% of her goal. (Docket No. 40 at 11). On May 5, 2017, Mr. Sullivan issued a Performance Improvement Plan ("PIP") to Ms. Brown to address her low sales figures and lingering performance issues. (Docket No. 40 at 11). This PIP required Ms. Brown to sell $420,000 of product and services by the end of the first week of June 2017 and to develop future business prospective of $850,000. (Docket No. 40 at 11). Mr. Sullivan scheduled weekly meetings with Ms. Brown to assess her progress. (Docket

---

[3]     He also kept the existing accounts he had developed in his former territory.
[4]     Juniper asserts, however, that four MAMs in total were reassigned to TAM positions. (Docket No. 40 at 6).

No. 40 at 11). Although Ms. Brown addressed the relevant performance issues by the deadline, she did not meet her sales goals, and Juniper terminated her. (Docket No. 40 at 12).

Ms. Brown filed a complaint in state court. (Docket No. 1-3). Juniper removed the case to this Court on November 2, 2016. (Docket No. 1). On May 1, 2019, Juniper moved for summary judgment on all claims against it. (Docket No. 38).

## **Legal Standard**

Under Federal Rule of Civil Procedure 56, a court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." An issue is "genuine" when a reasonable factfinder could resolve it in favor of the nonmoving party. *Morris v. Gov't Dev. Bank of Puerto Rico*, 27 F.3d 746, 748 (1st Cir. 1994). A fact is "material" when it may affect the outcome of the suit. *Id.*

When ruling on a motion for summary judgment, "the court must view the facts in the light most favorable to the non-moving party, drawing all reasonable inferences in that party's favor." *Scanlon v. Dep't of Army*, 277 F.3d 598, 600 (1st Cir. 2002) (internal quotation marks omitted).

## **Discussion**

The FMLA grants entitled employees the substantive right to take up to "12 workweeks of leave during any 12-month period" for a qualifying event. 29 U.S.C. § 2612(a)(1). And to protect this right, the FMLA prohibits an employer from (1) "interfer[ing] with, restrain[ing], or deny[ing] the exercise of or the attempt to exercise" the right to leave, or (2) discriminating or retaliating against an employee for taking leave. 29 U.S.C. § 2615; *Colburn v. Parker Hannifin/Nichols Portland Div.*, 429 F.3d 325, 330–31 (1st Cir. 2005). Ms. Brown raises claims of interference with her FMLA rights and discrimination and retaliation for the exercise of those rights. The Court addresses each claim in turn.

*1. Interference with FMLA Rights*

Ms. Brown alleges that Juniper interfered with her right to take FMLA leave because it failed to restore her to the same or an equivalent position. (Docket No. 9 at 7). Juniper contends that, because Ms. Brown returned to Juniper after her leave period had expired, Juniper had no obligation to place her in the same or an equivalent position. (Docket No. 39 at 10–11).

An employer generally must restore an employee to the same or an equivalent position, with "equivalent pay, benefits, and working conditions, and without loss of accrued seniority," at the end of a period of protected leave under the FMLA. *Colburn*, 429 F.3d at 330; *see also* 29 U.S.C. § 2614(a)(1). An employee has no right to reinstatement, however, if she does not return when her leave period expires. *See* 29 C.F.R. § 825.216. Ms. Brown's leave began on October 3, 2016. (Docket Nos. 42-1 at 4, 43-1 at 13, 53-1 at 2, 53-2 at 2). After numerous extensions, it was scheduled to expire on December 15, 2016. Ms. Brown, however, did not return to work until January 12, 2017. (Docket No. 40 at 6). She had no legal entitlement to the same or equivalent position under the FMLA on that date, so Juniper could not, as a matter of law, have interfered with her rights.

Ms. Brown appears to argue that she had FMLA leave through January 12, 2017, because she used paid time off, and not FMLA leave, for period of October 3, 2016, through October 16, 2016. (Docket No. 47 at 11). The record belies this contention. In her application, Ms. Brown labeled her requested leave as "FMLA for Maternity Leave or Employee's Own Serious Illness." (Docket No. 42-1 at 3). She did not differentiate between the period in which she requested paid time off and the period in which she requested short-term disability payments. Juniper policy, moreover, informs employees that "[a]ny paid leave you take is not exclusive of FMLA leave,

5

and will run concurrently with your FMLA entitlement."[5] (Docket No. 42-2 at 3). That Ms. Brown, pursuant to this policy, opted to receive compensation for the first two weeks through paid time off rather than a short-term disability plan does not alter the nature of her leave.[6] *See, e.g.*, *Daley v. Wellpoint Health Networks, Inc.*, 146 F. Supp. 2d 92, 99 (D. Mass. 2001) (granting summary judgment on an interference claim where the plaintiff was "clearly informed . . . that her paid leave would run *concurrently* with her FMLA leave"). The Court therefore **_grants_** summary judgment against Ms. Brown on the interference claim.

### 2. *Retaliation and Discrimination*

Ms. Brown argues that Juniper discriminated and retaliated against her for taking leave by (1) reassigning her to a TAM position and (2) terminating her.[7] (Docket No. 9 at 7–8). Juniper contends that Ms. Brown failed to raise a triable issue of fact as to retaliation or discrimination. (Docket No. 39 at 15).

Because Ms. Brown relies on indirect evidence of retaliation and discrimination, the *McDonnell Douglas* framework governs our assessment of the claims. *Hodgens v. Gen. Dynamics Corp.*, 144 F.3d 151, 160 (1st Cir. 1998) (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802–04 (1973)). Under the *McDonnell Douglas* framework, a plaintiff employee "carr[ies] the initial burden of coming forward with sufficient evidence to establish a prima facie case of discrimination or retaliation." *Id.* If a plaintiff establishes a prima facie case, the burden

---

[5] Ms. Brown contends that Juniper's policy is ambiguous. The Court disagrees. The policy clearly establishes that an employee may concurrently use paid time off during her FMLA leave, which is otherwise unpaid.

[6] But even assuming her leave had begun on October 17, 2016, the 12-week FMLA period would have ended on January 9, 2017. Ms. Brown returned to work on January 12, 2017, i.e., after the period ended.

[7] For the purposes of this motion, the Court addresses the retaliation and discrimination claims together because they implicate similar analyses. (Dockets No. 39 at 14, 47 at 12).

shifts to the employer to identify a legitimate, nondiscriminatory rationale for its actions. *Id.* "If the employer's evidence creates a genuine issue of fact, the presumption of discrimination drops from the case, and the plaintiff retains the ultimate burden of showing that the employer's stated reason for terminating him was in fact a pretext for retaliating against him for having taken protected FMLA leave." *Id.*

A. *Prima Facie Case*

To establish a prima facie case of discrimination or retaliation, Ms. Brown must show that (1) she exercised a protected right under the FMLA, (2) Juniper took an adverse action against her, and (3) there is a causal link between her exercised right and Juniper's adverse action. *Id.* Viewing the evidence in the light most favorable to Ms. Brown, Ms. Brown has met her initial burden.

First, Ms. Brown has shown that she exercised a protected right under the FMLA. Although the parties dispute the relevant dates, the parties agree that Ms. Brown took FMLA leave in 2016.

Second, Ms. Brown has shown that Juniper took adverse action against her. Her termination indisputably was an adverse action. *See id.* at 161. And despite Juniper's contentions otherwise, viewed in the light most favorable to Ms. Brown, the record suggests that her reassignment was also an adverse action.[8] TAMs cover an entire geographic area rather than designated "major" accounts. (Docket Nos. 40 at 2). They have lower sales achievement goals and, because they rely on new rather than regular sales, arguably have different job

---

[8] To the extent Ms. Brown contends that preventing her from attending the sales conference was an adverse action (Docket No. 47 at 14), the Court disagrees. Ms. Brown was not eligible to attend, and in any event, the record suggests that the relevant training materials were available online. (Docket Nos. 40 at 6, 48 at 4).

responsibilities than MAMs.  (Docket Nos. 40 at 2, 49 at 5).  Additionally, there is evidence that Mr. Sullivan intended the reassignment to be punitive.  Although the reorganization did not impact the actual existence of her role (Docket No. 50-2 at 5), Mr. Sullivan chose to reassign Ms. Brown alone of all his existing MAMs (Docket No. 43-2 at 14), and he gave her former position to Stan Frost, who was a TAM at the time (Docket No. 40 at 8).  When Ms. Brown started, moreover, Mr. Sullivan set a sales achievement quota that would have required Ms. Brown to increase sales in Stan Frost's former territory by almost 700%, even though Stan Frost had taken the largest accounts from that territory with him and Mr. Sullivan allegedly did not envision enough sales in that territory to justify backfilling Ms. Brown's position if she left.[9]  (Docket No. 49 at 3–4).

Third, Ms. Brown has shown a causal link.  The record, when viewed in the light most favorable to Ms. Brown, suggests that Juniper reassigned and eventually terminated her because she took protected leave under the FMLA.  Mr. Sullivan, for example, allegedly told Ms. Brown that he would have given her the MAM position if she had returned from her leave earlier. (Docket Nos. 43-1 at 17, 50-2 at 3).  And in a series of emails from December 2016, Mr. Sullivan expressed "frustration" with the extension of Ms. Brown's leave and asked, "When does this end?"  (Docket No. 48-6 at 2).  Additionally, the timing of Juniper's actions creates an inference of discrimination and retaliation.  *See Hodgens*, 144 F.3d at 168 ("In addition, close temporal proximity between two events may give rise to an inference of causal connection.").  Mr. Sullivan reassigned Ms. Brown upon her return to Juniper.  (Docket No. 40 at 8).  Juniper

---

[9]   Juniper offers evidence that Ms. Brown's successor to the position sold over $1.3 million to new customers alone.  (Docket No. 39 at 19–20).  But the Court must view the record in the light most favorable to non-moving party, i.e., Ms. Brown, in this motion for summary judgment, and Ms. Brown offers evidence that Mr. Sullivan stated he would not hire someone into her territory if she left.

then terminated Ms. Brown within six months for failing to stay on track with her sales achievement goal, despite Ms. Brown's expressed concerns that this goal was unreasonably high. (Docket Nos. 40 at 12, 49 at 3–4).

Because a reasonable jury could find that Juniper took adverse actions against Ms. Brown by reassigning and terminating her and that a causal link exists between these actions and her exercise of the right to leave, Ms. Brown has sufficiently established a prima facie case of retaliation and discrimination.

B. *Nondiscriminatory Rationale*

To rebut the presumption of retaliation and discrimination, Juniper must identify a legitimate, nondiscriminatory rationale for reassigning and terminating Ms. Brown. *See Hodgens*, 144 F.3d at 166. Juniper has met its burden as to both actions.

Juniper argues that Mr. Sullivan reassigned Ms. Brown as a part of a larger company reorganization. It also contends that the reassignment made sense because, given Ms. Brown's prior performance issues, Mr. Sullivan believed she might have better success in a TAM role. Juniper has offered evidence that Mr. Sullivan raised concerns with Ms. Brown prior to her leave about her failure to timely update her pipeline or submit expense reports. (Docket No. 43-1 at 8, 10–12). Juniper has also shown that Ms. Brown did not met her sales achievement goal in 2016 when she was working as a MAM. (Docket No. 40 at 3). Given her performance issues and low sales figures, a reasonable jury could find that Juniper had a legitimate, nondiscriminatory rationale for reassigning Ms. Brown.

Juniper argues that it terminated Ms. Brown because she failed to meet her sales achievement goal. The record indicates that Ms. Brown had only achieved 10% of her goal by the end of the first quarter and that, when Mr. Sullivan issued a PIP, Ms. Brown was not on track

9

to meet her second quarter goal. (Docket No. 40 at 11). Juniper reduced Ms. Brown's goal in the PIP and scheduled Ms. Brown to meet with Mr. Sullivan weekly to improve her performance. (Docket No. 40 at 11). Yet, despite this assistance, Ms. Brown failed to make enough sales by the end of the first week in June to meet the PIP. (Docket No. 40 at 11–12). Given her continued low sales figures, a reasonable jury could find that Juniper had a legitimate, nondiscriminatory rationale for terminating Ms. Brown.

C. *Pretext*

Juniper having identified a legitimate, nondiscriminatory rationale, the burden shifts to back to Ms. Brown to show, "at least to the level of trialworthiness, that the reason was a pretext." *Hodgens*, 144 F.3d at 166. Ms. Brown has made this showing.

An employee "may demonstrate pretext either indirectly by showing that the employer's stated reasons for its adverse action were not credible, or directly by showing that that action was more likely motivated by a discriminatory reason." *Id.* at 168. Ms. Brown has created a genuine dispute of material fact as to the credibility of Juniper's rationales. The record, for example, indicates that the reorganization did not impact the existence of Ms. Brown's role. (Docket No. 50-2 at 5). Mr. Sullivan nonetheless chose to reassign her—and to reassign *only* her from among the existing MAMs. (Docket No. 50-2 at 5). This circumstance undermines Juniper's proposed reorganization rationale. Additionally, Mr. Sullivan allegedly ignored Ms. Brown's concerns that her sales achievement goal was unreasonably high and stated that he would not backfill Ms. Brown's position if she left. (Docket No. 49 at 3–4). These assertions suggest that the company intended Ms. Brown to have poor performance by assigning her to a territory which it did not expect to provide enough sales to meet the assigned goal. (Docket No. 49 at 3–4).

Ms. Brown has also created a genuine dispute of material fact as to whether a discriminatory reason more likely motivated her reassignment and termination.  For example, she suggests that other employees failed to update their sales pipelines or submit expense reports and struggled with periods of low sales revenue.  (Docket No. 48 at 3).  Yet, none of these employees was reassigned or terminated.  Ms. Brown also submitted evidence that Mr. Sullivan expressed frustration with her leave and stated that he would have returned her to her former position if she had returned earlier.  (Docket Nos. 43-1 at 17, 48-6 at 2, 50-2 at 3).  This evidence indicates that her leave, and not the company's reorganization or her performance, motivated her reassignment and termination.

Because a reasonable jury could find that Juniper's rationales for reassigning and terminating Ms. Brown were pretextual, the Court ***denies*** Juniper's motion for summary judgment on the retaliation and discrimination claims.

## Conclusion

For the reasons stated above, the Court ***grants*** in part and ***denies*** in part Juniper's motion for summary judgment.  (Docket No. 38).  Juniper is entitled to judgment as a matter of law that it did not interfere with Ms. Brown's FMLA rights.  Ms. Brown's claims of retaliation and discrimination survive this motion.

**SO ORDERED**

                                                   ***/s/ Timothy S. Hillman***
                                                   **TIMOTHY S. HILLMAN**
                                                   **DISTRICT JUDGE**